UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: _05 -30157 -MAP_

| | |
|---|---|
| JOSIAH L. SIMPSON, JR., Individually, and JOSH SIMPSON CONTEMPORARY GLASS, INC., <br> Plaintiffs <br><br> vs. <br><br> BRIAN CARROLL, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, MARK FAIRBROTHER, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, PETER Golrick, Individually and in his Capacity as a Member of the TURNERS FALLS MUNICIPAL AIRPORT, and FRANK SOKOLOSKY, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, <br><br> MICHAEL J. SWEENEY, Individually and in his Capcaity as a Manager of the TURNERS FALLS MUNICIPAL AIRPORT, <br><br> TURNERS FALLS MUNICIPAL AIRPORT COMMISSION and <br><br> TOWN OF MONTAGUE, <br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF REMOVAL

Defendants in the above titled action, by their undersigned attorney, and pursuant to 28 U.S.C. 1441, *et seq.*, state as follows:

1. Defendants exercise their rights under the provisions of 28 U.S.C. §1441, *et seq.*, to remove this action from the Franklin Superior Court Department of the Trial Court,

403762

Commonwealth of Massachusetts, Franklin County, in which this case is now pending under the name and style: <u>Josiah L. Simpson, Jr., Individually and Josh Simpson Contemporary Glass, Inc. vs. BRIAN CARROLL, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, MARK FAIRBROTHER, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, PETER GOLRICK, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, and FRANK SOKOLSOSKY, Individually and in his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, MICHAEL J. SWEENEY, Individually and in his Capacity as a Manager of the TURNERS FALLS MUNICIPAL AIRPORT, TURNERS FALLS MUNICIPAL AIRPORT COMMISSION AND TOWN OF MONTAGUE,</u> Civil Action No.: FRCV2005-00055.

2. This is an action in which the District Courts of the United States have been given original jurisdiction in that it arises under the laws of the United States as provided in 28 U.S.C. §1331.

3. Specifically, plaintiffs allege a violation of their First Amendment Rights pursuant to 42 U.S.C. § 1983.

4. This action was filed on or about June 1, 2005. Summons dated June 2, 2005, and the complaint was served on the defendants on or about June 3, 2005. In accordance with the requirements of 28 U.S.C. § 1446, this Notice of Removal is filed within 30 days after the service of the summons and complaint upon the defendants.

5. Pursuant to 28 U.S.C. § 1446, the defendants are filing contemporaneously with this Notice of Removal copies of the following served upon it in this action (attached hereto):

    (a) Summons dated June 2, 2005;

    (b) Complaint.

403762

6. Based on the foregoing, the defendants respectfully request that this action be removed from the Superior Court, Department of the Trial Court of Massachusetts, Commonwealth of Massachusetts, Franklin Division, to the United States District Court for the District of Massachusetts, Western Division, the District where the action is pending.

7. Written notice of the filing of this Notice will be given to adverse parties.

8. A copy of this petition will be filed with the clerk of the Superior Court Department, Franklin Division.

WHEREFORE, the defendants respectfully request that this action be removed to this Court and that this Court accept jurisdiction of this action and that this action be placed on the docket of this Court for further proceedings, as though this action had originally been instituted in this Court.

THE DEFENDANTS

By _____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 544402

## CERTIFICATE OF SERVICE

I, Nancy Frankel Pelletier, Esq., hereby certify that on this 30th day of June, 2005, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to counsel, Alan Seewald, Esq., and Kristi A. Bodin, Esq., of Seewald, Jankowski & Spencer, P.C., Five East Pleasant Street, Amherst, MA 01002.

Subscribed under the penalties of perjury.

_____
Nancy Frankel Pelletier, Esq.

403762



# Commonwealth of Massachusetts

Franklin, ss.

**A True and Attested Copy**

*James E. Capen*
**6-3-05**

Deputy Sheriff    Franklin County

SUPERIOR COURT
CIVIL ACTION
No. 05-055

JOSIAH L. SIMPSON, JR. et al ........................., Plaintiff(s)

vs.

BRIAN CARROLL, et al ........................., Defendant(s)

## SUMMONS

### Tort - Motor Vehicle Tort - Contract - Equitable Relief - Other

To the above-named Defendant: MICHAEL J. SWEENEY, Individually and in his Capacity as a Manager of the Turners Falls Municipal Airport.

You are hereby summoned and required to serve upon    Alan Seewald

plaintiff's attorney, whose address is 5 East Pleasant Street, Amherst, MA 01002    ,

an answer to the complaint which is herewith serve upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Greenfield either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness,  Barbara  J.  Rouse,    Esquire at Greenfield, the    2nd    day
of    June    , in the year of our Lord    2005

*Doris D. Doyle*    Clerk

**NOTES:**

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT – Your need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

FRANKLIN, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION No.

JOSIAH L. SIMPSON, JR., Individually, and
JOSH SIMPSON CONTEMPORARY GLASS, INC.,
Plaintiffs

v.

BRIAN CARROLL, Individually and in his Capacity as a member of
the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION, MARK FAIRBROTHER,
Individually and in his Capacity as a member of the TURNERS FALLS
MUNICIPAL AIRPORT COMMISSION, PETER GOLRICK, Individually and in
his Capacity as a member of the TURNERS FALLS MUNICIPAL AIRPORT
COMMISSION, and FRANK SOKOLOSKY, Individually and in his Capacity
as a member of the TURNERS FALLS MUNICIPAL AIRPORT COMMISSION

MICHAEL J. SWEENEY, Individually and in his Capacity as a Manager
of the TURNERS FALLS MUNICIPAL AIRPORT,

TURNERS FALLS MUNICIPAL AIRPORT COMMISSION and

TOWN OF MONTAGUE,
Defendants

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### PARTIES

1.  The plaintiff, JOSIAH L. SIMPSON, JR., is a natural person

    residing in Shelburne Falls, Massachusetts.

2.  The plaintiff, JOSH SIMPSON CONTEMPORARY GLASS, INC.,

    (hereinafter "JSCGI") is a Massachusetts corporation with

    its principal offices located in Shelburne Falls,

    Massachusetts.

3. The defendants, BRIAN CARROLL,, MARK FAIRBROTHER, PETER
   GOLRICK, and FRANK SOKOLOSKY are each individuals residing
   in Montague, Massachusetts, and they are named Individually
   and in their official capacities as a member of the TURNERS
   FALLS MUNICIPAL AIRPORT COMMISSION.

4. The defendant, MICHAEL J. SWEENEY, is an individual residing
   in Montague, Massachusetts, and he is named Individually and
   in his official capacity as Airport Manager of the TURNERS
   FALLS MUNICIPAL AIRPORT.

5. The defendant, TOWN OF MONTAGUE, is a municipal corporation
   duly organized under the laws of the Commonwealth of
   Massachusetts, with offices in Turners Falls, Massachusetts.

6. The defendant, TURNERS FALLS MUNICIPAL AIRPORT COMMISSION,
   is a municipal agency of the Town of Montague duly organized
   under the laws of the Commonwealth of Massachusetts, with
   offices located in Turners Falls, Massachusetts.

### FACTUAL BACKGROUND

7. For all times relevant to this complaint, the plaintiffs, or
   either of them, have been the owner of a certain hangar
   building (hereinafter "Hanger 1") located on the property of
   the Turners Falls Airport.

8. Prior to purchasing Hangar 1, the plaintiff JSCGI entered
   into a Lease Agreement with the defendant Commission, dated
   July 16, 1997, under which the plaintiff leased a certain

-2-

area of approximately 2,400 square feet located on the land
of the Turners Falls Airport.  See Exhibit A.

9.   Hangar 1, which was constructed at the sole cost and expense
     of the plaintiffs, is located on the land leased under the
     Lease Agreement.

10.  The Lease Agreement entered into between the plaintiff JSCGI
     and the defendant Commission contains substantially all of
     the terms and conditions of the plaintiffs' occupancy of the
     land leased thereunder.

11.  Among the terms of the Lease Agreement as to Hangar 1 is an
     option to extend the term of the lease for an additional 10-
     year period.  See Exhibit A, at ¶ 2(b).

12.  In early 1999, the plaintiffs decided to purchase another
     hangar to be located on land of the Turners Falls Airport
     (hereinafter "Hangar 2")

13.  As a condition of obtaining a purchase mortgage loan
     commitment, the plaintiff Simpson was obligated to obtain an
     agreement to lease the area on which Hangar 2 was located.

14.  On or about the first week of March 1999, the plaintiff
     Simpson spoke with Lawrence Beaudoin, then the Airport
     Manager.

15.  At that time, Mr. Beaudoin had the actual authority to bind
     the defendant Commission as to an agreement to lease the
     area on which Hangar 2 was located.

-3-

16.  At that time, Mr. Beaudoin had the apparent authority to
     bind the defendant Commission as to an agreement to lease
     the area on which Hangar 2 was located.

17.  Mr. Beaudoin and the plaintiffs agreed to a lease of the
     area on which Hangar 2 is located on the same terms and
     conditions as the Lease Agreement as to Hangar 1, which
     agreement was confirmed by written memorandum.

18.  Both the plaintiffs and the plaintiffs' lender relied on the
     representations of Mr. Beaudoin as to the terms of a lease
     of the area on which Hangar 2 is located.

19.  In reliance on the representations of Mr. Beaudoin, the
     plaintiff JSCGI took title to Hangar 2 on or about June 11,
     1999.

20.  The defendants have failed and refused to honor the
     commitment made to the plaintiffs to lease the area on which
     Hangar 2 is located, and, on January 21, 2005, the
     plaintiffs herein filed an action in the Franklin Superior
     Court, C.A. No. 05-006, seeking declaratory and injunctive
     relief, in order to redress their grievances.

21.  On or about October 20, 2004, the plaintiff JSCGI served
     notice of exercise of the option to extend the lease
     agreement as to Hangar 1 in conformity with the requirements
     of paragraphs 2(b) and 26 of the Lease Agreement, which
     notice was received on October 21, 2004.  See Exhibit B.

-4-

22. From October 21, 2004 through January 21, 2005, the plaintiffs received no notice that the effectiveness of the exercise of the option to extend was in dispute.

23. Subsequent to the filing of the lawsuit on January 21, 2005, the plaintiffs received a letter from the defendant Sweeney, dated February 18, 2005, informing the plaintiffs for the first time that the defendants considered the plaintiffs to be in non-compliance with the Lease Agreement.  See Exhibit C.

24. By letter dated February 22, 2005, the defendants Sweeney informed the plaintiffs for the first time that the defendants were contesting the effectiveness of the exercise of the option to extend the Lease Agreement. See Exhibit D.

25. By letter dated March 1, 2005, the plaintiffs, through counsel, responded to the February 18, 2005, and February 22, 2005, letters. Therein, counsel requested that the defendants inform the plaintiff of the specific lease provision as to which the plaintiffs were alleged to be in breach.  See Exhibit E.

26. By letter dated March 8, 2005, the defendant Sweeney responded to the March 1, 2005 letter.  Therein, the defendant Sweeney refused to specify the lease provision as to which the defendants claimed the plaintiff to be in breach. Instead, the defendant Sweeney enclosed a copy of

-5-

the Lease Agreement, which document he knew was already in the plaintiffs' possession. See Exhibit F.

27.  The plaintiffs are unaware of any provision of the Lease Agreement as to which they are in breach.

28.  In retaliation for their having filed suit seeking an adjudication of the plaintiffs' rights, the defendants herein have engaged in a campaign seeking to coerce and intimidate the plaintiffs into relinquishing their claim as to Hangar 2.

29.  In so doing, the defendants, and each of them, have attempted to interfere by coercion, with the exercise or enjoyment by the plaintiffs of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth in redressing their grievances as to Hangar 2.

## COUNT I - MASSACHUSETTS CIVIL RIGHTS ACT

30.  The plaintiffs incorporate the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

31.  The conduct of the defendants, and each of them, constitutes a violation or violations of the Massachusetts Civil Rights Act, M.G.L. 12, §§ 11H and 11I.

-6-

WHEREFORE, the plaintiffs, JOSIAH L. SIMPSON, JR. and JOSH SIMPSON CONTEMPORARY GLASS, INC., hereby request the entry of judgment and the following:

    A.    An award of damages in an amount to be determined after trial on the merits of the plaintiffs' claims.

    B.    An award of injunctive and other equitable relief as provided in M.G.L. c. 12, § 11I.

    B.    An award of costs and fees.

    C.    An award of attorneys fees as provided in M.G.L. c. 12, § 11I.

    D.    Such other relief as this Court deems just and reasonable.

## COUNT II - 42 U.S.C., § 1983

32.  The plaintiffs incorporate the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

33.  The defendants, and each of them, have acted under the color of state law in their conduct as alleged above.

34.  The defendants, and each of them, have deprived the plaintiffs of rights, privileges or immunities secured by the United States Constitution or laws of the United States, including, but not limited to, the right to petition for redress of grievances without be subjected to retaliation

and coercion for such exercise, in violation of 42 U.S.C., §
1983.

WHEREFORE, the plaintiffs, JOSIAH L. SIMPSON, JR. and JOSH
SIMPSON CONTEMPORARY GLASS, INC., hereby request the entry of
judgment and the following:

A.   An award of damages in an amount to be determined after
     trial on the merits of the plaintiffs' claims.

B.   An award of injunctive and other equitable relief as
     provided in 42 U.S.C., § 1983.

B.   An award of costs and fees.

C.   An award of attorneys fees as provided in 42 U.S.C., §
     1988.

D.   Such other relief as this Court deems just and
     reasonable.

## COUNT III - DECLARATORY JUDGMENT

35. The plaintiffs incorporate the allegations contained in the
    preceding paragraphs of this Complaint as though fully set
    forth herein.

36. An actual case or controversy divides the parties as to the
    nature, terms and conditions of the plaintiffs' tenancy at
    the Turners Falls Airport with respect to Hangar 1.

WHEREFORE, the plaintiffs, JOSIAH L. SIMPSON, JR. and JOSH
SIMPSON CONTEMPORARY GLASS, INC., hereby request the entry of

-8-

judgment and the following:  a declaration of the rights of the parties hereto, as follows:

A.   A declaration that the plaintiffs are in compliance with the terms and conditions of the Lease Agreement.

B.   A declaration that the plaintiffs have effectively exercised the option to extend the Lease Agreement, and that the tenancy extends to 12:00 Midnight E.D.T. on the 15th of July, 2016.

C.   An award of costs and fees.

D.   Such other relief that this Court deems just and reasonable.

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

DATED:    June 1, 2005

Plaintiffs,
JOSIAH L. SIMPSON, JR., Individually,
and JOSH SIMPSON CONTEMPORARY GLASS, INC.,
By Their Attorneys,

Alan Seewald
BBO # 546790
Kristi A. Bodin
BBO # 566802
SEEWALD, JANKOWSKI & SPENCER, P.C.
Five East Pleasant Street
Amherst, Massachusetts 01002
Telephone:  (413) 549-0041
Facsimile: (413) 549-3818
Email: AS@SJSAmherst.com

-9-

## LEASE

PARTIES:

LEASE dated as of this 16th day of July, 1997, by and between Montague Airport Commission, a municipal corporation having its principal place of business at One Avenue A, Turners Falls, Town of Montague, Massachusetts (herein "LANDLORD") and Josh Simpson Contemporary Glass, Inc, of Frank Williams Road, Shelburne, Massachusetts, (herein "TENANT").

## WITNESSETH

PREMISES:

1.  LANDLORD hereby leases to TENANT and TENANT hires from LANDLORD, upon the terms and conditions herein set forth, the land consisting of approximately two thousand four hundred (2,400) square feet, at the Turners Falls Airport at Montague, Franklin County, Massachusetts, said land being described as the parcel that abuts the bituminous ramp beside of the so-called Municipal tiedown area on the southeast side and the so-called Hanrahan hangar on the northeast side. Said land will be more particularly described in Exhibit "A" which will be attached to and made a part of this Lease once a definitive survey is completed. Said land shall hereinafter be referred to as the "Demised Premises."

## TERM AND OPTION TO EXTEND TERM:

2. (a)  To have and to hold the Demised Premises for a term of ten (10) years commencing at 12:01 A.M. E.D.T. on the 16th day of July, 1997 and expiring 12:00 Midnight E.D.T. on the 15th day of July, 2006, unless sooner terminated as herein provided.

(b)  TENANT shall have the option to extend this Lease for a further term of ten (10) years at the rental as herein provided and as adjusted for inflation in accordance with Paragraph 3(b) hereof payable on the 16th day of July, 2006, and expiring 12:00 Midnight E.D.T. on the 15th day of July, 2016, unless sooner terminated as herein provided. Provided that at least one hundred fifty (150) days before the

expiration of the original term of this Lease TENANT shall notify LANDLORD in writing of his election to exercise his option to extend the Lease for another term, and further provided that this option may be exercised by TENANT only in the event that all rents have been fully paid and that all provisions of this Lease on the part of TENANT to be observed have been fully and faithfully observed.

It is also agreed and understood by the parties that no Lease extension will be granted unless the TENANT has made a good faith effort to build a hangar on the Demised Premises or at least to have definite plans to complete said Hangar during the extension of said Lease. Said progress to be determined by a majority of the Montague Airport Commission before said extension will be granted. With regard to such extension, a new lease agreement for the term of such extension shall be reviewed by both TENANT and LANDLORD at least 150 days prior to the termination of the original LEASE agreement, so that any necessary adjustments to the lease may be negotiated by both parties prior to its continuation.

## BASIC AND ADDITIONAL RENT:

3. (a)   TENANT agrees to pay to LANDLORD basic rent during the original term at the rate of three hundred and fifty dollars ($350) per year, payable in advance on the 16th day of July each year during the term hereof. If the said term commenced or terminates on other than the last day of any year, the said rent shall be equitably apportioned. All rent, whether basic or otherwise, shall be payable in lawful money of the United States at LANDLORD's office at One Avenue A, Village of Turners Falls, Town of Montague, Franklin County, Massachusetts or such other place as LANDLORD may from time to time designate in writing to TENANT.

(b)   The basic annual rental provided in subparagraph 3(a) above is subject to revision upward in recognition of the parties' expectation that long-term economic trends indicate that the real value of the rent provided for herein is likely to diminish. Accordingly, it is agreed that after the expiration of each year of the term of this Lease the basic annual rental provided in subparagraph 3 (a) shall be increased by a flat rate of twelve ($12) dollars.

## UTILITIES:

4. (a)  LANDLORD shall provide electrical service to a junction box within a reasonable distance from the Demised Premises, the exact location to be agreed upon by the parties.  TENANT is responsible and must contract for connection of electrical service from said junction box to the Demised Premises.

(b)  TENANT shall, during the term hereof, pay for all utilities consumed on or in connection with the use and occupancy of the Demised Premises, including without limitation water, gas, sewer, electricity, and fuel.

## CONDITION OF PREMISES REPAIRS AND MAINTENANCE:

5. (a)  TENANT accepts the Demised Premises in the condition in which they are on the date of commencement of the term hereof, acknowledging that they are in good order and condition and sufficient for the uses intended by TENANT.  TENANT agrees that he has had full and adequate opportunity to inspect the Demised Premises and has done so to his satisfaction. . LANDLORD has made and TENANT has relied on no representations and warranties, whether express or implied, as to the condition of the Demised Premises or their suitability for TENANT's use other than those which may be specifically set forth in this Lease.

(b)  TENANT shall, at its own expense, keep the access taxiway, sidewalks, curbs, entrances, passageways, parking lot and areas adjoining the Demised Premises in a clean and orderly condition, free from snow, ice, rubbish and obstructions.

## ALTERATIONS AND IMPROVEMENTS:

6. (a)  TENANT shall have the right to erect on the land a building of approximately two thousand four hundred (2,400) square feet, more or less, to be used solely for the storage and maintenance of AIRPLANE, #N91553 (the "Hangar").  The final plans and specifications for the Hangar must be approved in writing by LANDLORD, which approval will not be unreasonably withheld.

(b)  TENANT shall, before erecting the Hangar or making any alterations, additions or improvements to it or the Demised Premises, at its sole expense, obtain all permits, approvals and certificates required by any governmental authority and shall promptly deliver copies of same to LANDLORD. TENANT will cause TENANT's contractors and subcontractors to carry such workers compensation, general liability and personal property damage insurance as LANDLORD may reasonably

require. TENANT agrees to hold LANDLORD free and harmless from any liability for labor or materials supplied for such work and shall keep the Demised Premises free from mechanics liens of any kind by obtaining waivers thereof and by removing or bonding any lien filed within ten (10) days from receipt of notice of the filing thereof.

(c) The parties agree that any Hangar constructed on the LANDLORD's property shall not become affixed or attached thereto, but shall remain the personal property of the TENANT.

(d) LANDLORD shall provide an access road from the public road known as Millers Falls Road and a taxiway from the main taxiway to within a reasonable distance from the Hangar. TENANT shall be responsible, at its sole cost and expense, for extending said access road and taxiway to the Hangar and for the act of repairing and maintaining said access road and taxiway.

(e) At the termination of this Lease, and any extension thereof or holdover period, the TENANT shall have the right to remove his Hangar, at his expense, provided that he shall restore the land, as practicable as possible to the condition it was in at the beginning of the Lease. Prior to such removal, however, the LANDLORD shall have the right and option to purchase the Hanger from the TENANT at a price mutually determined and agreed upon by the parties. In the event they are unable to establish such a price, they shall retain the services of an appraiser at their joint expense who will determine the fair market value of the Hangar. This option shall be exercised by the giving of notice by the LANDLORD to the TENANT of his intention to purchase the Hangar within thirty (30) days after termination of this Lease, or any extension thereof or hold-over period, or by giving of such notice within thirty (30) days after receipt of notice from the TENANT of his intention to remove the Hangar from the premises. In the event that the LANDLORD does not wish to exercise its option to purchase, and in lieu of removal, the TENANT shall have the right to sell the Hangar to any third party who may thereafter remove the Hangar or enter into any new Lease arrangement with the LANDLORD, provided that the TENANT shall remain responsible to ensure that the land is restored to its original condition as provided above in the event of removal. In the event of such removal and sale, the LANDLORD shall permit such third party to enter upon the land to remove the Hangar.

## USE AND RESTRICTIONS:

7. (a)  TENANT may use the Demised Premises solely for storage and maintenance of **AIRPLANE, #N91553.** There shall be no commercial use of the Demised Premises nor any commercial activity based out of the Demised Premises unless the TENANT first executes a commercial use agreement with the LANDLORD. Said commercial use agreement shall be a separate and independent document defining the rights, obligations, and fee payments of the TENANT regarding specific commercial activities.

   (b)  TENANT shall not use nor suffer or permit the use by any person of the Demised Premises and its appurtenant rights for any purpose or in any manner which is contrary to any applicable law or regulation, which may constitute a nuisance or be offensive or which could cause injury or damage to the Demised Premises.

## RULES AND REGULATIONS:

8.  TENANT shall, at its own cost and expense, subsequent to the commencement date hereof, promptly comply with all present and future laws, ordinances, rules and regulations of any duly constituted governmental authority relating to the use or occupancy of the Hanger and the Demised Premises. TENANT shall promptly pay all fines, penalties and damages that may arise out of or be imposed because of TENANT's failure to comply with the provisions of this paragraph.

## INDEMNIFICATION AND LIABILITY:

9.  TENANT shall indemnify and hold the LANDLORD harmless from any and all claims for injury to person or damage to property by reason of any accident or happening on the Demised Premises unless caused by the fault or negligence of LANDLORD or its agents, servants or employees. TENANT shall carry public liability insurance in limits of at least Five Hundred Thousand Dollars ($500,000.00) for injury or death to one person, and One Million Dollars ($1,000,000.00) for damage to property. One the commencement of the term of this Lease and thereafter not less than thirty (30) days prior to the expiration date of the policies of insurance required by this paragraph 9, TENANT shall deliver to LANDLORD copies of such policies or certificates of the insurer with respect thereto reasonably satisfactory to LANDLORD, accompanied by evidence of the

payment of the premium for the policies. All such insurance policies shall provide that no cancellation thereof or material change therein shall be made unless LANDLORD shall have been given twenty (20) days prior written notice thereof and that no act or omission by TENANT shall invalidate such policies as they apply to LANDLORD. LANDLORD shall have the right to cause TENANT to reasonably increase limits of public liability insurance upon the giving of ninety (90) days notice of such change in writing to TENANT.

## FIRE AND EXTENDED COVERAGE INSURANCE:

10. (a)   In addition to the public liability insurance provided for in paragraph 9 hereof, once the Hangar is constructed TENANT shall keep the Hangar, the Demised Premises and all equipment now or hereafter on or forming part of the Demised Premises or the Hangar insured against loss of fire, windstorm, tornado, and hail and against loss or damage by such other risks as are now or hereafter may be covered by the standard extended coverage forms of endorsement, with an insurance company or companies authorized to do business in the Commonwealth of Massachusetts and approved by LANDLORD, which approval LANDLORD agrees shall not be unreasonably withheld. Such insurance shall be in an amount equal to not less than the full fair insurance value of the Demised Premises and the Hangar. The term "fair insurable value" shall mean actual full replacement cost, without deduction for depreciation, and in any event an amount sufficient to prevent LANDLORD or TENANT from being deemed a co-insurer under the terms of the applicable policy or policies. The insurance provided by said policies shall include coverage against vandalism and malicious mischief. If a sprinkler and/or "pressure vessel" shall be located in the Hangar, TENANT shall provide and keep in force sprinkler leakage insurance and insurance against loss by boiler explosion, respectively, in amounts reasonably satisfactory to LANDLORD.

(b)   On the commencement of the term of this Lease, and hereafter not less than thirty (30) days prior to the expiration date of the policies of insurance required by this paragraph 10, TENANT shall deliver to LANDLORD copies of such policies or certificates of the insurer with respect thereto in form reasonably satisfactory to LANDLORD, accompanies by evidence of the payment of the premiums for the policies. Binders shall be acceptable to LANDLORD if definitive policies or certificates thereof are not obtainable at the time in question, provided TENANT shall deliver such policies or certificates to LANDLORD as soon as possible

thereafter. Each insurance policy shall provide that no cancellation thereof or material change therein shall be made unless LANDLORD and any Institutional First Mortgagee hereunder shall have first been given at least twenty (20) days' written notice thereof, that no act or omission by TENANT shall invalidate such policy as it applies to LANDLORD and that LANDLORD shall not be liable for any premiums or assessments on such policy. Each insurance policy shall, to the extent obtainable, also provide for waivers of all rights of subrogation against LANDLORD or TENANT.

(c)   TENANT shall not violate or permit violation of any of the conditions and provisions contained in the insurance policies provided for hereunder. TENANT shall perform and satisfy the requirements of the insurance company writing any such policies so that at all times insurance companies of good standing shall be willing to write or to continue such insurance policies. Nothing herein shall prevent LANDLORD from carrying additional insurance.

## TENANT'S FAILURE TO PERFORM:

11. (a)   If TENANT shall at any time fail to take out, pay for, maintain or deliver any of the insurance policies provided for in this Lease, or shall fail to make any other payment or perform any other act on its part to be made or performed under this Lease, then LANDLORD, after 10 days' notice to TENANT, except when other notice is expressly provided for in this Lease (or without notice in case of an emergency), and without waiving or releasing TENANT from any obligation of TENANT contained in this Lease, may (but shall be under no obligation to):

(1)   Take out, pay for and maintain any of the insurance policies provided for in this Lease; or

(2)   Make any other payments or perform or cause to be performed any act on TENANT's part to be made or performed as in this Lease provided; and may enter upon the Hanger and the Demised Premises for any such purpose, and take all such action thereon as may be necessary therefor.

(b)   All sums so paid by LANDLORD and all costs and expenses incurred by LANDLORD in connection with the performance of any such act, together with interest thereon at the rate of 14% per annum or such lesser rate as may at the time by the maximum rate permitted by law, from the respective dates of

LANDLORD's making of such payment or incurring of each such cost and expense, shall be paid by TENANT to LANDLORD on demand as if the same were additional rent hereunder (and nonpayment of which shall have the consequences as nonpayment of rent).

## MECHANIC'S LIENS:

12. Notice is hereby given that LANDLORD shall not be liable for any labor or materials furnished, or to be furnished, to the TENANT and that no mechanic's liens or other liens for any such labor or materials shall attach to or affect the reversionary or other estate or interest of LANDLORD in and to the Demised Premises. TENANT further agrees to indemnify and hold harmless LANDLORD against any and all costs it may suffer on account of the same.

## LANDLORD'S ACCESS:

13. TENANT agrees that LANDLORD upon reasonable advance notice to TENANT (or without notice in case of emergency) may enter upon the Hangar or the Demised Premises at reasonable hours so as not to unduly interfere with the normal conduct of TENANT's business (or at any time in case of emergency) for the purpose of inspecting the same and making repairs thereto as it may be required or permitted to do under the terms of this Lease.

## EXPIRATION OF TERM:

14. (a)    TENANT at the expiration of the term hereof, or at any prior termination as herein provided, shall peaceably yield up the Demised Premises, the Hangar and all additions, improvements and alterations made thereupon in the same condition and repair as the same were in at the commencement of the term hereof, or may have been put in thereafter, reasonable wear and use, damage by fire or other casualty, acts of God, acts of war and the enemy and acts of paramount authority only excepted.

(b)    TENANT and those claiming by, through or under TENANT, may, if LANDLORD has opted under Paragraph 6(e) hereof to retain title to the Hangar, at any time prior to the expiration of the term or prior termination thereof, then or within a reasonable time thereafter, not to exceed twenty (20) days, remove its personal property, trade fixtures and any equipment installed by it from the

Demised Premises or the Hangar, provided that if such removal causes any damage to the Demised Premises or the Hangar, TENANT shall promptly repair the same.

(c) Any property, fixtures or equipment of TENANT's remaining on the Demised Premises or the Hangar after said twenty (20) day period shall be deemed abandoned and may be removed and disposed of by LANDLORD as LANDLORD shall determine, and LANDLORD may charge the cost of such removal and any repairs or replacements to the Demised Premises or the Hangar necessitated thereby to TENANT.

15. In the event that TENANT or anyone claiming by, through or under TENANT shall remain on the Demised Premises or the Hangar after the termination of this Lease or any renewals, extensions or modifications thereof, it shall be deemed to be a tenancy from month to month subject to all the terms and conditions hereof as may be applicable.

## ASSIGNMENT AND SUBLETTING:

16. TENANT shall not transfer, sublet, assign, hypothecate or otherwise alienate this Lease or TENANT's interest in and to all or any part of the Demised Premises or the Hangar, nor shall TENANT grant any person any license or permission to use the Demised Premises or the Hangar, without LANDLORD'S prior written consent on each occasion, which consent shall not be unreasonably withheld. Any attempted transfer, subletting, assignment, license to use, hypothecation or other alienation of this Lease shall be void and shall confer no rights on third parties.

## SIGNS:

17. No signs, billboards, posters or advertising material of any type or description shall be erected or kept on the Demised Premises or the Hangar without the prior written consent and approval of LANDLORD.

## ASSIGNMENT AND SUBLETTING:

18. (a)   If the Demised Premises are partially damaged or destroyed by storm, fire, lightning, earthquake, or other casualty, but are still usable by TENANT for airport and aviation purposes in substantially the same manner as they were usable immediately prior to such damage or destruction, the basic rental hereunder shall be adjusted to take into account the value of any leased space lost as a result of the damage or destruction. Said rental adjustment shall apply until the damage is repaired or the destroyed areas are restored by LANDLORD (if LANDLORD opts to effect such repairs or restoration). If the damage or destruction is so extensive as to render the Demised Premises not suitable for the said airport and aviation purposes, this Lease shall terminate thirty (30) days after the date of such damage or destruction.

## EMINENT DOMAIN:

19 (a)   If the entire Demised Premises shall be taken for different public or quasi-public purposes, then this Lease shall terminate as of the date TENANT shall be required by law to vacate the Demised Premises and surrender them to the authority making the taking.

(b)   If such portion of the Demised Premises shall be taken as to render the Demised Premises unsuitable for the continuance of airport and aviation activities in substantially the same manner as the same were being conducted immediately prior to such taking, then TENANT shall have the right to terminate this Lease by giving written notice to LANDLORD within thirty (30) days after receipt of Notice of Entry for purposes of effectuating the taking.

(c)   If the Demised Premises, or any part thereof, shall be rendered untenantable and the Lease is not terminated, the rent herein reserved or a just and proportionate part thereof, shall be suspended or abated according to the nature and extent of the taking from the date of such taking until the Demised Premises shall be restored, and if after such restoration the Demised Premises are smaller than they were prior to the taking or the utility thereof to TENANT otherwise diminished, the annual rent shall be equitable reduced.

(d)   In the event of any such taking, the proceeds thereof shall be payable to LANDLORD and TENANT shall have absolutely no right or interest in any award, except that TENANT shall be entitled to damages for any taking of the

Hangar, either whole or in part, and may maintain any separate civil action to seek such damages.

## DEFAULT AND TERMINATION OF LEASE:

20.    If the rent herein reserved shall not have been paid when due, and shall remain unpaid for ten (10) days after written notice by LANDLORD to TENANT; or if any of the other covenants, conditions and obligations of TENANT under this Lease shall not be performed within thirty (30) days after notice by LANDLORD to TENANT thereof, or if by the nature of said default more than thirty (30) days shall be required to cure the same, if such curative action is not commenced within thirty (30) days and diligently pursued thereafter until completed; or in the event that TENANT shall be adjudicated a bankrupt or should a permanent receiver in insolvency or permanent trustee in bankruptcy of TENANT be appointed and said appointment shall not have been vacated within sixty (60) days, or should TENANT make a general assignment for the benefit of creditors, or file a voluntary petition for reorganization under the Bankruptcy Act, then and in each such case it shall and may be lawful for LANDLORD, at LANDLORD's option, but only during the continuance of such default or event of insolvency or bankruptcy, to declare the term of this Lease ended and enter into the Demised Premises or any part thereof, either with or without process of law, expel TENANT or any person or persons occupying in or upon said Demised Premises, using such force as may be necessary to do so, and so to repossess and enjoy the said premises as of LANDLORD's former estate, without being guilty of trespass, forcible entry, detainer or other tort.

## ESTOPPEL CERTIFICATE:

21.    Upon not less than fifteen (15) days prior written request, LANDLORD and TENANT agree, each in favor of the other to execute, acknowledge, and deliver a statement in writing certifying that this Lease is unmodified and in full force and effect (or, if there have been any modifications that the same are in full force and effect as modified and stating the modifications), and the dates to which the basic rent hereunder and other charges have been paid and any other information reasonably requested. Any such statement delivered pursuant to this paragraph may be relied upon by any prospective purchaser, mortgagee or lending source.

## FAILURE OF APPROVAL:

22.   Whenever the consent or approval of either party to this Lease is required, the same shall not be unreasonably withheld or delayed.

**FORCE MAJEURE:**

23.   Except as herein elsewhere provided to the contrary, all of the obligations of LANDLORD and TENANT hereunder are subject to the following conditions, to wit: If performance other than the payment of money is prevented by reason of fire, strike, labor difficulty, inability to obtain supplies or other difficulties beyond the reasonable control of the party required to perform such obligations, the performance shall be excusable during period of such inability.

**COVENANT OF QUIET ENJOYMENT:**

24.   LANDLORD covenants that upon TENANT's paying the rent herein reserved and performing and observing all the other covenants to be performed and observed on the part of TENANT, TENANT may use and occupy the Demised Premises throughout the full term of this Lease without any disturbance by any person whatsoever. Notwithstanding the foregoing, if any person not claiming by, through or under LANDLORD shall disturb or attempt to disturb TENANT's use, LANDLORD shall not be deemed in breach of this paragraph 24 if LANDLORD shall immediately thereafter at its own expense cause such disturbance to cease.

**CUMULATIVE RIGHTS:**

25.   Any and all rights and remedies which either party may have hereunder shall be cumulative and the exercise of any one of such rights shall not bar the exercise of any other right or remedy which said party may have.

**NOTICES:**

26.   Whenever in this Lease it shall be required or permitted that notice, demand or other communication be given or served by either party to this Lease to or upon the other, such notice shall be deemed to have been duly given or served if in writing and forwarded by certified or registered mail, return receipt requested, postage prepaid, addressed to the party to whom it is to be given or served at its address first above written. Each party may change its above address for purposes of notices by notice to the other party in the manner hereinbefore provided.

## SHORT FORM:

27.  The parties hereto agree that upon request by either party, the other party will execute whatever instruments may be necessary for the recording of a short form or notice of this Lease.

## ENTIRE AGREEMENT:

28.  This instrument contains the entire and exclusive agreement between the parties and supersedes and terminates all prior or contemporaneous arrangements, understandings and agreements, whether oral or written. This Lease may not be amended or modified, except by a writing executed by LANDLORD and TENANT.

(a)  Addendum itemizing arbitration proceedings to be considered a part of this contract and shall be signed by all parties no later than one month after this dated contract.

29.  In construing this Lease, feminine or masculine pronouns shall be substituted for those of neuter form and vice versa, and the plural for the singular and singular for plural in any place where the context may require.

## GOVERNING LAW AND SEVERABILITY:

30.  This Lease shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts. In the event any provision of this Lease shall be determined to be invalid or unenforceable under applicable law such provision shall, insofar as possible, be construed or applied in such manner as will permit enforcement; otherwise this Lease shall be construed as if such provision had never been made part hereof.

31.  The headings used herein are used only for convenience of reference and are not to be considered a part of this Lease or to be used in determining the intent of the parties hereto.

## ADDENDUM REFERRED TO IN PARAGRAPH 28(a)

## RESOLUTION OF DISPUTES

Arbitration. In the event of any claim or dispute arising out of or relating to this contract or the breach thereof, after reasonable negotiations have proven futile. The same shall be determined by arbitration in the most local city possible in accordance with the rules then obtaining of the American Arbitration Association and judgment upon the award of the arbitrators may be entered in any court having jurisdiction. The prevailing party shall be entitled to be reimbursed for its legal fees and expenses incurred in connection with such dispute and in the event that the arbitration has been initiated to obtain payment of the purchase price, together with interest at the rate of fifteen (15%) percent per annum from the earliest date of the default in such payment.

## ADDENDUM REFERRED TO IN PARAGRAPH 28(a)

## RESOLUTION OF DISPUTES

Arbitration. In the event of any claim or dispute arising out of or relating to this contract or the breach thereof, after reasonable negotiations have proven futile. The same shall be determined by arbitration in the most local city possible in accordance with the rules then obtaining of the American Arbitration Association and judgment upon the award of the arbitrators may be entered in any court having jurisdiction. The prevailing party shall be entitled to be reimbursed for its legal fees and expenses incurred in connection with such dispute and in the event that the arbitration has been initiated to obtain payment of the purchase price, together with interest at the rate of fifteen (15%) percent per annum from the earliest date of the default in such payment.

TURNERS FALLS AIRPORT
Turners Falls, Massachusetts

RULES AND REGULATIONS
Governing the Operation and Policies of the Turners Falls Airport

## 1. PURPOSE

These standards are prepared in compliance with Section 51 J of Chapter 90 of the General Laws of the State of Massachusetts. The Montague Airport Commission, hereinafter referred to as Commission, hereby establishes minimum standards of operation for a Fixed Base Operator or other related operations and businesses doing business on Turners Falls Airport.

1. No person, firm, or corporation shall use the Airport or any portion thereof as a Fixed Base Operator or Flight Operator for revenue producing commercial, business, or aeronautical activities who has not first obtained consent and a permit for such activities from the Airport Commission and entered into such written leases and other agreements prescribed by the Commission.

## II. GENERAL REQUIREMENTS FOR ALL COMMERCIAL OPERATIONS BASED AT TURNERS FALLS AIRPORT:

1. All operations must be in conformance to current FAA, Local and Massachusetts Aeronautical Regulations and Laws.
2. Must demonstrate financial stability, credit rating and currency with respect to payment of all taxes, fees and other agreed charges to the Airport Commission.
3. Requirement to indemnify the Town of Montague, backed by liability insurance in appropriate amounts, for all claims rising from or attributable to the operations to which these standards are applicable.
4. Operate and make available to the public all contractual services for at least an eight hour day, seven days a week schedule.
5. For the duties to be performed, provide supervised personnel, adequately trained and certified and at good moral character.

## III. LEASE CLAUSES

Lessee agrees to operate the premises leased for the use and benefit of the public.

1. To furnish good, prompt, and efficient services adequate to meet all the demands for its service at the airport.
2. To furnish said service on a fair, equal, and non-discriminatory basis to all users thereof, and

3. To charge fair, reasonable, and non-discriminatory prices for each unit of sale or service, provided that the Lessee may be allowed to make reasonable and non-discriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

The Lessee, his agents and employees will not discriminate against any person or class of persons by reason of race, color, creed or national origin in providing any services or in the use of any of its facilities provided for the public, in any manner, prohibited by Part 15 of the Federal Aviation Regulations.

The Lessee further agrees to comply with such enforcement procedures as the United States might demand that the Lessor take in order to comply with the Sponsor's Assurances.

It is clearly understood by the Lessee that no right or privilege has been granted which would operate to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own regular employees (including, but not limited to, maintenance and repair) that it may choose to perform.

It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right.

Lessor reserves the right to further develop or improve the landing area of the airport as it sees fit, regardless of the desires or view of the Lessee, and without interference or hindrance.

Lessor reserves the right, but shall not be obligated to Lessee, to maintain and keep in repair the landing area of the airport and all publicly owned facilities of the airport, together with the right to direct and control all activities of Lessee in this regard.

Lessor reserves the right to take any action it considers necessary to protect the aerial approaches of the airport against obstruction, together with the right to prevent Lessee from erecting, or permitting to be erected, any building or other structure on or adjacent to the airport which, in the opinion of the Lessor, would limit the usefulness of the airport or constitute a hazard to aircraft.

## IV. RULES ESTABLISHING MINIMUM STANDARDS FOR OPERATION FOR FIXED BASE OR FLIGHT OPERATORS OR RELATED OPERATIONS ON THE TURNERS FALLS AIRPORT:

1. A Fixed Base Operator or Flight Operator shall be defined for the purpose of this rule to mean anyone who performs or conducts any one or all of the following activities:
a. The Operation of an Air School, which shall mean any person orpersons or corporation engaged in giving or offering to give instructions in aeronautics, either in flying aircraft or ground subjects or both, or for hire or reward, and/or employs other persons for such purposes.
b. Operations of Aircraft for Hire, other than aircraft engaged principally in federally certificated scheduled airline operation having a certificate of public convenience and necessity issued by the Civil Aeronautics Board of the United States or its successors, shall mean hire to the general public or members or classes there of and shall not include such operations as are incidental to the carrying on of the general business of the aircraft owner engaged in a business other than aeronautics.

3. To charge fair, reasonable, and non-discriminatory prices for each unit of sale or service, provided that the Lessee may be allowed to make reasonable and non-discriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

The Lessee, his agents and employees will not discriminate against any person or class of persons by reason of race, color, creed or national origin in providing any services or in the use of any of its facilities provided for the public, in any manner, prohibited by Part 15 of the Federal Aviation Regulations.

The Lessee further agrees to comply with such enforcement procedures as the United States might demand that the Lessor take in order to comply with the Sponsor's Assurances.

It is clearly understood by the Lessee that no right or privilege has been granted which would operate to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own regular employees (including, but not limited to, maintenance and repair) that it may choose to perform.

It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right.

Lessor reserves the right to further develop or improve the landing area of the airport as it sees fit, regardless of the desires or view of the Lessee, and without interference or hindrance.

Lessor reserves the right, but shall not be obligated to Lessee, to maintain and keep in repair the landing area of the airport and all publicly owned facilities of the airport, together with the right to direct and control all activities of Lessee in this regard.

Lessor reserves the right to take any action it considers necessary to protect the aerial approaches of the airport against obstruction, together with the right to prevent Lessee from erecting, or permitting to be erected, any building or other structure on or adjacent to the airport which, in the opinion of the Lessor, would limit the usefulness of the airport or constitute a hazard to aircraft.

## IV.  RULES ESTABLISHING MINIMUM STANDARDS FOR OPERATION FOR FIXED BASE OR FLIGHT OPERATORS OR RELATED OPERATIONS ON THE TURNERS FALLS AIRPORT:

1. A Fixed Base Operator or Flight Operator shall be defined for the purpose of this rule to mean anyone who performs or conducts any one or all of the following activities:

a. The Operation of an Air School, which shall mean any person or persons or corporation engaged in giving or offering to give instructions in aeronautics, either in flying aircraft or ground subjects or both, or for hire or reward, and/or employs other persons for such purposes.

b. Operations of Aircraft for Hire, other than aircraft engaged principally in federally certificated scheduled airline operation having a certificate of public convenience and necessity issued by the Civil Aeronautics Board of the United States or its successors, shall mean hire to the general public or members or classes there of and shall not include such operations as are incidental to the carrying on of the general business of the aircraft owner engaged in a business other than aeronautics.

c. The Sale, Demonstration or Rental of Aircraft, the sale of aircraft parts and supplies including the sale of aircraft fuel and oil or the servicing of aircraft with fuel and oil.

d. The Maintenance and Repair of Aircraft and Appurtenances, except persons engaged in minor maintenance on aircraft owned or operated by them.

e. Aircraft Radio Sale and/or Service.

f. The furnishing of aircraft storage or tiedowns.

g. the giving of sightseeing rides, the performing of aerial photography, serial advertising and surveying, aerial patrol, operation of Air Ambulance or cargo services.

h. Any other activity, which involves, makes possible or is required involving the operation of aircraft, or the airport, or which contributes to or is required for the safety of such operation.

1. The foregoing shall not apply to anyone landing at Turners Falls Airport for the purpose of securing service or making a visit.

2. A prospective Fixed Base Operator shall demonstrate an initial investment in building, equipment, furniture, fixtures, tools and other assets (excluding aircraft) pertaining to his operation on Turners Falls Airport which meets the approval of the Commission.

## V. MAINTENANCE OF ASSIGNED AREAS:

Each operator will be responsible for keeping his designated area in a clean and neat appearance at all times. The accumulation of oil, cans, 50 gallon drums, hoses, debris, trash, and other used material that would cause a hazard or disorderly appearance to the area is prohibited. Buildings and all other structures under the care of the operator on or in close proximity to the airport shall be maintained in good repair and appearance subject to the approval of the Commission.

## VI. FEES:

All fees or charges shall be set, and/or lease agreements shall be negotiated by the Airport Commission.

## VII. COMMERCIAL OPERATIONS:

No person, partnership, or corporation shall have the right to operate any business or concern on any part of the Airport premises without first having received a written permit from the Airport Commission.

## VIII VEHICLES:

No unauthorized vehicles shall enter the ramp, runway, or taxiway area without permission from the Airport Manager or other authorized personnel designated by the Airport Manager, as outlined in Massachusetts Aeronautical Regulation V. 8

## IX. PARKING:

a. Parking of vehicles or aircraft shall be permitted only in those areas so designated by the Airport Commission.

b. No vehicle shall park in the metered parking areas without payment of the parking fees. Violators shall be subject to the penalties imposed for violation of the Turners Falls Airport Regulations approved by the Massachusetts Aeronautics Commission, as specified in chapter 90, Section 44 of the General Laws of Massachusetts.

## X. SOLICITING:

No soliciting, or passing out of circulars, or flyers, or other similar material shall be permitted by anyone on any portion of the Airport premises without the permission of the Airport Manager.

## XI. SIGNS:

No signs, either fixed or mobile, shall be displayed on the Airport premises without first obtaining the approval of the Airport Commission.

Approved as to the contents, being the Rules and Regulations Governing the Operation and Policies of the Turners Falls Airport and accepted by the Montague Airport Commission as of the 16 day of April, 1970.

Montague Airport Commission
ByWinthrop L. Cummings, Chairman


Massachusetts Aeronautics Commission
By Crocker Snow, Director of Aeronautics
Date: April 22,1970

In WITNESS WHEREOF, the parties hereto have set their hands and seals as of the day and year first above written

MONTAGUE AIRPORT COMMISSION,
LANDLORD

Witnessed By Its Chairman

JOSH SIMPSON for
JOSH SIMPSON CONTEMPORARY GLASS, INC.
TENANT

Witnessed By Tenant's Hand

In WITNESS WHEREOF, the parties hereto have set their hands and seals as of the day and year first above written.

MONTAGUE AIRPORT COMMISSION,
LANDLORD

Witnessed By Its Chairman

JOSH SIMPSON for
JOSH SIMPSON CONTEMPORARY GLASS, INC.
TENANT

Witnessed By Tenant's Hand

**Department of Transportation**
**Federal Aviation Administration**

Notice of Proposed Construction or Alteration

*Failure To Provide All Requested Information May Delay Processing Of Your Notice*

Aeronautical Study Number

| Nature of Proposal | | | 2. Complete Description of Structure |
|---|---|---|---|
| A. Type | B. Class | C. Work Schedule Dates | Please describe the proposed construction or alteration. |
| ☐ New Construction | ☒ Permanent | Beginning _ASAP_ | A. For proposals involving transmitting stations, include effective radiated power (ERP) and assigned frequency. If not known, give frequency band and maximum ERP. |
| ☒ Alteration * | ☐ Temporary (Duration ____ months) | End _30 days_ | B. For proposals involving overhead wire, transmission lines etc., include the size and the configuration of the wires and their supporting structures. |

Alteration, provide previous FAA Aeronautical Study Number, if available :

Name, address, and telephone number of individual, company corporation, etc. proposing the construction or alteration.  (Number, Street, City, State, and Zip Code)

*JOSH SIMPSON CONTEMPORARY GLASS, INC.*
*30 FRANK WILLIAMS RD.*
*SHELBURNE, MASS 01370*

( 413 ) 625 6145
Area Code      Telephone Number

C. For buildings, include site orientation, dimensions, and construction materials.

D. Optional— Describe the type of obstruction marking and lighting system desired. The FAA will consider this in their study.

Name, address and telephone number of proponent's representative, if different than 3A. above.

*SAME*

( ) 
Area Code      Telephone Number

*HANGER BUILDING 60' x 40' x 21' TALL located west of runway 34/16 All steel construction with electric Bi-fold Door.*

| Location Of Structure | | | 5. Height and Elevation (to nearest foot) | |
|---|---|---|---|---|
| Coordinates ( to hundredths of seconds, if known) | B. Nearest City or Town and State | C. Nearest public or military airport, heliport, flightpark, or seaplane base | A. Elevation of ground above mean sea level. _357'_ | 357' |
| Latitude 42° 35' 15.79" | TURNERS FALLS, MA | ORANGE | | |
| Longitude 072° 31' 15.42" | (1). Distance from structure to nearest point of nearest runway | B. Height of structure including all appurtenances and lighting above ground or water. | 21' |
| | (1). Distance to 4B _3 Miles_ | _this 500'_ | | |
| Source for item 4A data. | (2). Direction to 4B | (2). Direction from structure to airport | C. Overall height above mean sea level | 378' |
| ☐ USGS 7.5' Quad Chart  ☐ Survey  ☒ Other Specify  _GPS_ | NORTH | LOCATED WEST SIDE MID WAY ON RUNWAY | | |

Note the reference datum.

☐ NAD 27   ☐ NAD 83   ☒ Other Specify  _GARMIN 195 GPS_

4E. Description of site location with respect to highways, street, airports, prominent terrain, features, existing structures, etc. Please attach a U.S. Geological Survey Map (or equivalent) showing the construction site. If available, attach a copy of a documented site survey with the surveyor's certification.

_USGS MAP ENCLOSED. + Airport Map_

Notice is required by Part 77 of the Federal Aviation Regulations (14 C.F.R. Part 77) pursuant to Section 1101 of the Federal Aviation Act of 1958, as amended (49 U.S.C. app. § 1501). Persons who knowingly and willfully violate the Notice requirements of Part 77 are subject to a civil penalty of $1,000 per day until the notice is received, pursuant to Section 902(a) of the Federal Aviation Act of 1958, as amended (49 U.S.C. app § 1472(a)) as well as the fine (criminal penalty) of not more than $500 for the first offense and not more than $2,000 for subsequent offenses, pursuant to Section 902(i) of the Federal Aviation Act of 1958, as amended (49 U.S.C. app § 1472(i)).

I HEREBY CERTIFY that all of the above statements made by me are true, complete, and correct to the best of my knowledge. In addition, I agree to obstruction mark and/or light the structure in accordance with established marking & lighting standards as necessary.

| Date | Typed or Printed Name and Title of Person Filing Notice | Signature |
|---|---|---|
| 7/15/97 | JOSH SIMPSON | |

FOR FAA USE ONLY

| | | |
|---|---|---|
| ADDS Coordinates | Latitude | Longitude | Date |

FAA Form 7460-1 (5-94) Supersedes Previous Edition

NSN: 0052-00-012-0001

Federal Aviation Administration
New England Region
12 New England Executive Park
Burlington, MA 01803-5299

JOSH SIMPSON CONTEMP. GLASS INC                    AERONAUTICAL STUDY
30 FRANK WILLIAMS RD.                              No: 97-ANE-0498-OE
SHELBURNE, MA 01370                                Date: 08/13/97

Type Structure: HANGAR

This acknowledges receipt of your Notice of Proposed Construction
or Alteration dated 07/15/97.

An aeronautical study will be conducted on the following location:

| CITY | STATE | NAD-83 LATITUDE/LONGITUDE | MSL | AGL | AMSL |
|------|-------|---------------------------|-----|-----|------|
| TURNERFALLS | MA | 42-35-51.90 072-31-54.20 | 357 | 21 | 378 |

Your proposal has been assigned Aeronautical Study Number 97-ANE-0498-OE.
These are NAD-83 coordinates. Please use the NAD-83 coordinates on all
future correspondence. Should there be any question concerning this
proposal, please feel free to contact Suzanne Dempsey of the
Airspace Branch, ANE-530, New England Region
Our office telephone number is (617) 238-7530.

Thank you for participating in the Obstruction Evaluation program.

20 October 2004

Turners Falls Municipal Airport
One Avenue A
Turners Falls, MA 01376

Dear Airport Comissioners,

I would like to inform you that I intend to exercise my option to extend the term of the lease for my hanger at the Airport for another term, commencing at 12:01 AM EDT on 16 July 2006 and continuing for 10 years until 12:00 midnight EDT on 15 July 2016.

Thank you for your help in this matter.

Sincerely,

Josh Simpson

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Turners Falls Municipal Airport
One Avenue A
Turners Falls, MA 01376

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                            ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
                                 10210 4

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)   7001  3510  0007  5498  4643

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Sent To _Turners Falls Municipal Airport_
Street, Apt. No.; _One Avenue A_
or PO Box No.
City, State, ZIP+4 _Turners Falls, MA    01376_



# Turners Falls Municipal Airport

One Avenue A, Turners Falls MA. 01376
Town Hall 413-863-3204    Airport Office 413-863-0044
Airport FAX 413-863-0044

February 18, 2005

Josh Simpson Contemporary Glass, Inc.
Frank Williams Road
Shelburne, Massachusetts 01370

Attn: Josh Simpson

   Re: Reservation of rights with respect to the lease agreement
     dated July 16, 1997

Dear Mr. Simpson:

   The Montague Airport Commission is aware that, in several significant ways,
Josh Simpson Contemporary Glass, Inc., is currently, and has been for some time, in
breach of the lease agreement you signed on its behalf on July 16, 1997. The
Commission will no longer accept rent for the lease without reservation of right to
proceed, pursuant to the terms of the lease agreement, to enforce its covenants, and you,
as the official representative of Josh Simpson Contemporary Glass, Inc., are hereby
notified that the rent tendered therefor on December 22, 2004, and any rent tendered
hereafter, is accepted with full reservation of all rights, pursuant to the lease agreement,
to enforce it. If Josh Simpson Contemporary Glass, Inc., is not in compliance with all the
terms and conditions of the lease agreement by July 16, 2005, the Commission will take
any and all necessary steps either to insure compliance with it or, if necessary, to
terminate the tenancy created by it.

           Sincerely,

           Michael J. Sweeney,
           Airport Manager,
           Per order of the
           Montague Airport Commission

cc: Bruce D. Colegrove

CERTIFIED MAIL NO.: 7033 1010 0000 0595 8283
RETURN RECEIPT REQUESTED



# Turners Falls Municipal Airport

One Avenue A, Turners Falls MA. 01376
Town Hall 413-863-3204    Airport Office 413-863-0044
Airport FAX 413-863-0044

February 22, 2005

Josh Simpson Contemporary Glass, Inc.
Frank Williams Road
Shelburne, Massachusetts 01370

Attn: Josh Simpson

Re: Purported notice to extend lease

Dear Mr. Simpson:

The Montague Airport Commission is in receipt of your letter of October 20, 2004, regarding your contractual right to extend the lease you signed on behalf of Josh Simpson Contemporary Glass, Inc., on July 16, 1997. Please be advised that, because Josh Simpson Contemporary Glass, Inc., was in violation of its lease on the date of the aforementioned letter and remains in violation to date, your letter, to the extent that it is intended to be notice of lease extension, is ineffective, pursuant of the terms of the lease, to exercise the right to extend it.

Sincerely,

Michael J. Sweeney,
Airport Manager,
Per order of the
Montague Airport Commission

cc: Bruce D. Colegrove

CERTIFIED MAIL NO.: 7003 1010 0000 0595 8290
RETURN RECEIPT REQUESTED



# Turners Falls Municipal Airport

One Avenue A, Turners Falls MA, 01376
Town Hall 413-863-3204     Airport Office 413-863-0044
Airport FAX 413-863-0044

February 22, 2005

Josh Simpson Contemporary Glass, Inc.
Frank Williams Road
Shelburne, Massachusetts 01370

Attn: Josh Simpson

     Re: Purported notice to extend lease

Dear Mr. Simpson:

    The Montague Airport Commission is in receipt of your letter of October 20, 2004, regarding your contractual right to extend the lease you signed on behalf of Josh Simpson Contemporary Glass, Inc., on July 16, 1997. Please be advised that, because Josh Simpson Contemporary Glass, Inc., was in violation of its lease on the date of the aforementioned letter and remains in violation to date, your letter, to the extent that it is intended to be notice of lease extension, is ineffective, pursuant of the terms of the lease, to exercise the right to extend it.

Sincerely,

Michael J. Sweeney,
Airport Manager,
Per order of the
Montague Airport Commission

cc: Bruce D. Colegrove

CERTIFIED MAIL NO.: 7003 1010 0000 0595 8290
RETURN RECEIPT REQUESTED

# SEEWALD, JANKOWSKI & SPENCER, P.C.

*Attorneys at Law*

ALAN SEEWALD
DEBORAH TOBIE JANKOWSKI
ROBERT J. SPENCER
KRISTI A. BODIN

FIVE EAST PLEASANT STREET
AMHERST, MA 01002-1501
(413) 549-0041 (TELEPHONE)
(413) 549-3618 (FACSIMILE)

EMAIL: ALAN.SEEWALD@SEEWALDJANKOWSKI.COM

March 1, 2005

By Certified Mail, Return Receipt Requested
No.   7099 3400 0000 3936 7570

Michael J. Sweeney, Airport Manager
Turners Falls Municipal Airport
One Avenue A
Turners Falls, Massachusetts 01376

RE:   Josh Simpson Contemporary Glass, Inc.

Dear Mr. Sweeney:

As you know, this office represents Josh Simpson Contemporary Glass, Inc.   I am in receipt of your letters to my client dated February 18, 2005 and February 22, 2005. Both letters allege that my client is in breach of the lease agreement dated July 16, 1997, without specifying which provision or provisions of that agreement you allege my client has violated, and without indicating what my client is doing or not doing in breach thereof.

Please inform me specifically on what basis you allege my client to be in breach of the lease agreement, including each specific lease provision that you allege my client has violated, and the conduct that you allege forms the basis for each such alleged violation.

If I do not hear from you within seven (7) days of your receipt of this letter, my client has authorized me to file suit seeking a declaratory judgment and such other relief as may be appropriate.

I will await your timely response.

Very truly yours,

Alan Seewald

AS/A
xc:   Josh Simpson Contemporary Glass, Inc.



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael J. Sweeney,
Airport Manager
Turners Falls Municipal Airport
One Avenue A
Turners Falls, MA 01376

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   [ ] Agent   [ ] Addressee

B. Received by (Printed Name)   C. Date of Delivery
3-3-05

D. Is delivery address different from item 1?  [ ] Yes
   If YES, enter delivery address below:  [ ] No

3. Service Type
   [X] Certified Mail   [ ] Express Mail
   [ ] Registered   [X] Return Receipt for Merchandise
   [ ] Insured Mail   [ ] C.O.D.

4. Restricted Delivery? (Extra Fee)   [ ] Yes

2. Article Number
(Transfer from service label)   7099 3400 0000 3936 7570

PS Form 3811, August 2001   Domestic Return Receipt   102595-02-M-1554

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

7099 3400 0000 3936 7570

Article Sent To:
Michael Sweeney   AS

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Name (Please Print Clearly) (to be completed by mailer)
Michael Sweeney, Airport Manager
Street, Apt. No.; or PO Box No.
T.F. Mun. Airport, One Avenue A
City, State, ZIP+4
Turners Falls, MA 01376

PS Form 3800, July 1999



# Turners Falls Municipal Airport

One Avenue A, Turners Falls MA. 01376
Town Hall 413-863-3204    Airport Office 413-863-0044
Airport FAX 413-863-0044

March 8, 2005

Alan Seewald, Esq.
Seewald, Jankowski & Spencer, P.C.
Five East Pleasant Street
Amherst, MA 01002-1501

Re:    Josh Simpson Contemporary Glass, Inc.

Dear Attorney Seewald,

As you know, I am receipt of your letter March 1, 2005. For your convenience I am sending you a copy of the Josh Simpson Contemporary Glass, Inc., Lease Agreement. A careful reading of the Lease Agreement in consultation with Mr. Simpson will reveal how your client is in breach.

Furthermore, Clause 20 of the Lease Agreement, Default and Termination of Lease, requires the Turners Falls Municipal Airport Commissions to notify your client of specific breaches of the Lease Agreement only in anticipation of termination of the Lease Agreement for breach of its terms and conditions. At this time the Commission does not intend to terminate your client's Lease Agreement.

The purpose of the letters of February 18, 2005, and February 22, 2005, is to reserve the Commission's contractual right to give the notice required by Clause 20 if your client is not in compliance with the Lease Agreement by July16, 2005. In the event that your client is not in compliance with the Lease Agreement on July 16, 2005, the notice of breach required by Clause 20 will be given with specificity, followed, after the appropriate time period without cure of the breach, a notice of termination of tenancy.

If I can be of any further assistance in this matter, please feel free to contact me.

Sincerely yours,

Michael J. Sweeney
Airport Manager

Cc    B. Colegrove

CERTIFIED MAIN NO.: 7003 3110 0002 2999 2776
RETURN RECEIPT REQUESTER

⚓JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| JOSIAH L. SIMPSON, JR., et.al. | BRIAN CARROLL, et.al. |

**(b)** County of Residence of First Listed Plaintiff ___Franklin___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ___Franklin___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Alan Seewald, Esq., of Seewald, Jankowski & Spencer, P.C., Five East Pleasant Street, Amherst, MA01002

Attorneys (If Known)
Nancy Frankel Pelletier, Esq., of Robinson Donovan, P.C., 1500 Main Street, Suite 1600, Springfield, MA 01115

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Under Equal Access |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | to Justice |
| | Employment | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | State Statutes |
| | Other | | | | |
| | ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983

Brief description of cause:
The Plaintiffs allege a violation of their First Amendment Rights pursuant to

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

Franklin County Superior Court Civil Action No.: 05-006

JUDGE                                    DOCKET NUMBER

DATE
June 29, 2005

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT                APPLYING IFP              JUDGE              MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)_____

    JOSIAH L. SIMPSON, JR. v. BRIAN CARROLL

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See
    local rule 40.1(a)(1)).

    ☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ☒  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,          *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.             for patent, trademark or copyright cases

    ☐  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 385, 370, 371,
             380, 385, 450, 891.

    ☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

    ☐  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

    Not Applicable

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                          YES ☐      NO ☒

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See
    28 USC §2403)

                                                          YES ☐      NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                          YES ☐      NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                          YES ☐      NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                                                          YES ☒      NO ☐

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☐       Central Division ☐       Western Division ☒

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
         agencies,  residing in Massachusetts reside?

         Eastern Division ☐       Central Division ☐       Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
    yes, submit a separate sheet identifying the motions)

                                                          YES ☐      NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Nancy Frankel Pelletier, Esq., Robinson Donovan, P.C.

ADDRESS  1500 Main Street, Suite 1600, Springfield, MA 01115

TELEPHONE NO.  (413) 732-2301

(Coversheetlocal.wpd - 10/17/02)